Milligan, J.,
delivered the opinion of the Court.
This bill was filed in the Chancery Court at Memphis, to restrain the Mayor and Aldermen of the City Corporation, from interfering with the complainant, Lynch, in the exercise of his duties as “City Physician,” for the 40th corporation year, under the city charter.
It seems that this officer is required to be elected annually, and as soon as practicable, after the general election for Mayor and Aldermen, which, by the charter, is required to be held on the last Thursday in June, in each year. This election was not held at the regular time, for the 40th corporation year, but was postponed, in consequence of the passage of the Act, known as the Franchise Law, passed on the 3d of May, 1866, until *98 the registration of votes required by that Act, could he completed and reported to the Governor, who was then to issue his proclamation and writs of election, to fill all vacant offices. Under this Act of the Legislature, the Mayor and Board of Aldermen of the city, were elected, in October, 1866. But prior to this time, the board elected for the 39th corporation year — holding over until their successors were elected and qualified, in July, 1866 — elected the complainant, “City Physician;” he gave bond as required by the city ordinance, and was regularly inducted into office. The new hoard came in, and, by resolution, adopted by more than two-thirds of the board, declared this and other offices vacant; and thereupon proceeded to elect one Dr. Woodward, in place of the complainant, as “City Physician,” who was also qualified as required by the city ordinance; and, under the instructions of the Mayor, demanded the custody and control of the City Hospital, medical stores, surgical instruments, property, etc., thereunto belonging.
The Chancellor declared the complainant lawfully entitled to the office of “City Hospital Physician,” for one year from the date of his election; and restrained, by injunction, the defendants, from, in any way, interfering with him in the exercise of his duties as such, etc. From this decree, the defendants appealed in error to this Court.
The question presented involves the consideration of the power of the two boards, and the validity of the complainant’s election, for the 40th corporate year, by the board elected for the 39th corporation year.
*99 By the City Charter, the Aldermen are elected, by the qualified voters of their respective wards, for one year. The Mayor is elected by the qualified voters of the city, and holds his office for one year, and until his successor is duly elected and qualified. The Recorder, Wharf Master, Chief of Police, Tax Collectors, etc., are, in like manner, elected by the people for one year, and hold their offices until their successors are elected and qualified.
In addition, the charter creates several other enumerated officers, such as City Register, Treasurer, City Engineer, Inspectors, and Captains of the Day, and of the Night, Police, etc., whose terms of office are to be prescribed by ordinance. These officers are elected by the Board of Aldermen, and hold their offices, by the terms of the charter, until their successors are qualified.
The charter also provides: “There shall be such other officers and agents of the corporation, as may be provided by ordinance, to bo elected by the Board of Aldermen, to perform such duties as may be prescribed by ordinance.”
Under this provision of the charter, it seems an ordinance was passed, creating, and defining, and limiting the duties and terms of certain enumerated officers; among which, are, City Comptroller, City Register, Street Commissioner, Treasurer, Engineer, etc. — all of whom are to be elected by the Board of Aldermen, and hold their offices until their successors are appointed and qualified, unless sooner removed.
The office of City Physician, does not appear, under this ordinance, to have been created; but afterwards, *100 this office is created by an ordinance, somewhat similar in its provisions to the former ordinance. It provides, that the “City Hospital Physician” shall be annually appointed by the Mayor and Aldermen, and that he shall be responsible to them, and hold his office “for one year, and until his successor is elected and qualified; but may be, for good cause, dismissed by vote of the board.”
These several offices, as well as those created by the charter, and to be filled by the board, are to be filled by the Board of Aldermen as soon as practicable after their election and organization, on the nomination of the Mayor; and the officers thus elected continue in office for one year, and until their successors are respectively elected and qualified; unless sooner removed for good cause, and in the manner prescribed by ordinance.
It is proper to remark, that the charter authorizes special elections to be held, to fill vacancies in such offices as are created by charter, until the next regular election and qualification of their successors; and such as are created by ordinance, under authority of the charter, are filled, as declared by ordinance, “for the remainder of the corporation year.”
The charter also provides for the removal of any person holding office under its provisions, from office, by a vote of two-thirds of the Aldermen. In this provision of the charter, no cause for removal seems to be required to be assigned. The Mayor may be removed, by a vote of two-thirds of the Aldermen, for a misdemeanor in office.
The charter-day as prescribed in the charter, is the last Thursday in June, of each and every year; but, as we have seen, that day was postponed until after *101 tbe registration of voters, and the proclamation of the Governor, so that the election for Major and Aldermen, and other corporation officers elected by the people, did not actually take place until the 13th of October, 1866. The passage of the Franchise Law, while it does not, in terms, repeal or modify the City Charter, had the practical effect to change the charter-day, and to that extent, worked a modification in the charter. Rut, whether this change was permanent or temporary, incidental or direct, it will not, at this day, be questioned, that the Legislature has the right to change, alter, or repeal the charter of a public municipal corporation at pleasure: The Governor et al. vs. McEwen et al., 5 Hum., 288; Daniel vs. The Mayor and Aldermen of Memphis, 11 Hum., 582; Angell & Ames on Corporations, 24, 25—650—1.
It is equally clear, we think, that the failure to elect on the charter-day, even under the principles of the common law, as well as our own decisions and Statutes, does not take away from the corporation, the right to hold the election afterwards, when the annual day of election, as in this case, has passed by without fraud or design: 2 Kent’s Com., 295, mar.; Nashville Bank vs. Petway, Hum., 522; see also, Code of Tenn., secs. 1481, 1365, 1378.
By the terms of the Statute, Code, sec. 1481, the failure by a corporation to elect its officers at the proper time, neither dissolves the corporation or discontinues its officers, but they hold over until the election, or appointment and qualification of their successors.
*102 This we think, in this case, would be so, even without the direct provisions of the Statute. The terms of the officers of the corporation of the City of Memphis, rests, not upon any constitutional limitations, but upon the provisions of the charter, and the by-laws enacted thereunder, and the tenure of the city officers must be decided with reference to them. The city charter, as well as the ordinances, creating and defining the duties of certain officers, as we have already seen, limits the term of the offices to one year, and until their successors are elected and qualified; and in such case, the old officers, on failure of the corporation to elect their successors, without design or fraud, on the charter-day, would,, by the terms of the charter, hold over until their successors were elected and qualified: Angell & Ames on Corporations, 85—227; see, also, Code of Tenn., sec. 1482.
From this view of the case, it follows as a corollary, that the officers of the city, as well the Mayor and Aldermen as all others — whether lawfully in by the people, or the board — for the 39th corporate year, held over until their successors were elected and qualified. They, of necessity, under the charter and ordinances, went out, on the coming in of the new board, elected at the general election in October, 1866; and that board, after its regular organization, had full power to elect their successors.
Dr. Warner, as it appears from the agreed facts, having been elected by the old board, for the 39th corporate year, by the charter, ending on the last *103 Thursday in June, 1866, held over, until the qualification of his successor by the new board. At this time, by operation of law, his lawful connection with the office ceased, and it was competent for the new board to fill his place.
But it is said, the election of Dr. Lynch after the regular termination of the charter year, in June, 1866, had the effect, ipso facto, of removing Dr. Warner, and Dr. Lynch being in, by authority of the old board, held, his office for the whole of the 40th year, and could not be displaced without good cause. How this would be, were it shown that Lynch was elected by a two-thirds vote, we do not deem it necessary now to determine, as the result must be the same, whether it is held that Lynch’s election vacated the office then held by Warner, or that it was made when there was no vacancy. In the latter alternative, the election of Lynch was a mere nullity, and did not oust the regular incumbent; and in the former, by the terms of the charter, and the ordinances of the corporation, as we have before shown, he was only in until his successor was regularly elected and qualified. So it follows, in either event, the office of “City Hospital Physician,” was vacant at the election of Dr. Woodward, in October, 1866, and that he was lawfully elected to the office, by a competent and lawful board, and as such, is entitled to all the privileges and ■ emoluments of the office.
The decree of the Chancellor is, therefore, erroneous, and must be reversed, and the bill dismissed.